The opinion of the Court was delivered by
Gibson J.
At the trial I certainly thought I had power to allow an amendment, even before the jury were sworn; and although the right to amend was claimed exclusively on common law grounds, I yet think that if the act of assembly could make any other difference than as to the time when the application may be madeja new trial should be granted to have the amendment allowed. But the act, which provides that the plaintiff shall not be non-suited for mere informality, but that it shall be amended, and that the defendant may alter the shape of his defence on or before the,trial, was intended to impower, or possibly to require, the Courts to grant amendments after swearing the jury, as fully as they could do before it; and also to enable a judge at Nisi Prius to allow amendments when the cause is called for trial, which could, formerly, be allowed only in bank. The extent of its opera *295 tion in other respects, although it has been liberally construed, has been to permit a modification, but not a change, of the cause of action. An alteration in a date, a sum, the name of a party, or a circumstance, may be made where it does not affect the identity of the transaction. Now this is precisely the rule of the common law, and the act, going no further, operates to render an application unobjectionable only in point of time, which would be otherwise, were it not for its aid ; for by the common law an amendment, must be made in term time, and before the ju^r are. sworn. Here the declaration contained two counts charging the defendant as endorser of two promissory notes, drawn by Noble C. Nelson, .for 4322 dollars, and also a count for 5Q00 dollars lent; but the amendment would have introduced five other notes, amounting in all to about 10,000 dollars, entirely different as to dates, sums, and (as regards two of them) even as to the name of the drawer, and would have added a count for money had and received : all which would, in fact, have entirely changed the plaintiffs’ ground, and would have introduced a new matter, altogether distinct from the transaction originally set forth. That could not be done. But as the notes actually declared on, were not due when the suit was commenced, it is presumed the notes intended to be substituted by the amendment, were originally intended to be the subject matter of the action, but were omitted by mistake ; and hence it is said, that as the statute of limitations would intervene to prevent a fresh suit, this case should be an exception to the general rule. It was indeed held in Bearcroft v. The Hundreds of Barnham and Stone, and the Executors of the Duke of Marlborough v. Widmore, cited in Cope v. Marshall, Sayer’s Rep. 235. that when the time of bringing a new action is expired, the Court will allow an amendment which introduces a new transaction ; but at the period of those decisions the statute was considered an unconscionable plea, while, in latter times, it is treated with indulgence ; and the avoiding of it was, in Shock v. M'Chesney, 4 Yeates, 507. considered even as a reason for refusing án amendment. If, however, mistake had been clearly made out, and the application to amend had been in a reasonable time, I am far from saying we might not' have given relief on that ground ; but a delay of nine years, during all which the defendant has been preparing himself against this particular demand, is out *296 of all reason ; especially as the plaintiffs, by the exercise of ordinary attention, would have discovered the error long since.
The other point insisted on at the trial, that a paper handecj t0 the opposite counsel pursuant to a request, becomes competent evidence for both parties, although it were incompetent before, has very properly not been pressed. Admitting, for the sake of the argument, that books delivered and inspected after being called for, become evidence as well for the party producing, as the party calling for them, although they would be otherwise incompetent, yet the reason of the rule shews its extent. A party would have an unreasonable advantage, who could use the arm of the Court to wring his antagonists books out of his hands and use them against him, or not, as they might be found to answer his purpose ; and he must, therefore, according to the English practice, either not have recourse to the measure at all, or take it at the risk of making the books evidence at all events, and for both parties. Here, however, there was no call, either for books, or through the Court, but a mere request with which the other party was not bound to comply ; and the production of the paper as an act of courtesy, cannot change its character as to competency. There must be judgment on the verdict.
New trial refused.